**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 10-cv-01475-REB-CBS

HOLLY ROMERO,

    Plaintiff,

v.

JACQUELINE A. BERRIEN, Chair, Equal Employment Opportunity Commission,

    Defendant.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**Blackburn, J.**

The matters before me are (1) defendant's **Motion for Summary Judgment** [#49][1] filed June 5, 2011; and (2) **Plaintiff's Cross-Motion for Partial Summary Judgment** [#50] filed June 6, 2011. I grant defendant's motion, deny plaintiff's motion, and dismiss plaintiff's claims.

### I. JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question).

### II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. **FED. R. CIV. P.** 56(c);

---

[1] "[#49]" is an example of the convention I use to refer to the docket number of a motion or order, and will be used throughout this Order.

***Celotex Corp. v. Catrett***, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party. ***Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); ***Farthing v. City of Shawnee***, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); ***Farthing***, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue.  ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir. 1994), ***cert. denied***, 115 S.Ct. 1315 (1995).  By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense.  ***See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation***, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002).  In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper.  ***Concrete Works***, 36 F.3d at 1518.[2]  All the evidence must be viewed in the light most favorable to the party opposing the motion.  ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999).  However, conclusory

---

[2] However, the fact that the parties have filed cross-motions for summary judgment does not necessarily indicate that summary judgment is proper.  ***See Atlantic Richfield Co. v. Farm Credit Bank of Wichita***, 226 F.3d 1138, 1148 (10th Cir. 2000); ***James Barlow Family Ltd. Partnership v. David M. Munson, Inc.***, 132 F.3d 1316, 1319 (10th Cir. 1997); ***see also Buell Cabinet Co. v. Sudduth***, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. **Rice v. United States**, 166 F.3d 1088, 1092 (10th Cir.), **cert. denied**, 120 S.Ct. 334 (1999).

### III.  ANALYSIS

This case involves allegations of sex, age, and national origin discrimination and retaliation under Title VII, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. § 621 *et seq*.  Plaintiff is employed by the Denver Field Office ("DFO") of the Equal Employment Opportunity Commission ("EEOC") as a Supervisory Investigator.  In October, 2008, the DFO solicited for applicants to fill the open position of Enforcement Manager.  Applications were solicited under two different announcements, one internal, for merit promotion eligible candidates, the other open to all United States citizens, called the Delegated Examining Unit ("DEU") list.

Although eligible to apply under either or both of these lists, plaintiff applied for the position under the internal list only.  Applications were considered initially by a human resources specialist, Kathleen Monday, located in Indianapolis, Indiana.  Her vetting produced two "certificates," one from the DEU list and one from the internal list, of candidates considered qualified for the Enforcement Manager position.  The two certificates were forwarded to DFO Director Nancy Sienko.  Seinko and Monday did not discuss the certificates prior to the time they were forwarded to Seinko.

Sienko then consulted with her District Resource Manager, Carol Gray, on whom she relied for personnel matters, to determine whether she was required to consider all candidates on both certificates.  Gray informed her that it was up to Sienko to determine

which certificate to use in selecting interview candidates. She did not inform Sienko, and Sienko was not aware of, any requirement that she consider all candidates. Ultimately, she decided to interview candidates only from the DEU certificate because she felt that her current management team did not support her and had a style of communication and management that were contrary to her own. Once the decision to select candidates only from the DEU certificate was made, Seinko did not consider plaintiff's application further. Seinko ultimately selected a candidate from the DEU certificate, Erica Gagne, for the Enforcement Manager position.

Plaintiff filed and EEO complaint regarding her non-selection for the Enforcement Manager position on February 19, 2009. Plaintiff alleges that Seinko and Gagne subsequently retaliated against her by orchestrating a campaign to undermine her supervisory authority. Many of the allegedly retaliatory incidents involve Seinko and/or Gagne encouraging investigators under plaintiff's supervision to come directly to Seinko and/or Gagne with workplace concerns. Other complaints involve failing to grant plaintiff extensions of work-related deadlines, transferring employees to and from plaintiff's unit, an informal counseling and formal letter of warning issued to plaintiff by Gagne, disapproving of plaintiff's requests to participate in a mentorship program, and Seinko becoming "defensive and accusatory" when questioned about her affidavit in response to the EEO complaint.

With regard to plaintiff's claims of age, sex, and national origin discrimination related to her non-selection for the Enforcement Manager position, defendant concedes for purposes of this motion that plaintiff can establish the elements of a *prima facie* case. **See McDonnell Douglas Corp. v. Green**, 411 U.S. 792, 802-04, 93 S.Ct. 1817,

36 L.Ed.2d 668 (1973); **Garrison v. Gambro, Inc.**, 428 F.3d 933, 937 (10th Cir. 2005).[3] Nevertheless, it argues that Seinko's reasons for deciding to interview candidates only from the DEU certificate constitute legitimate, non-discriminatory reasons for plaintiff's non-selection. **See Garrett v. Hewlett-Packard Co.**, 305 F.3d 1210, 1216 (10th Cir. 2002). I concur, and, thus, the only question remaining is whether plaintiff has presented evidence sufficient to create a genuine issue of material fact regarding pretext.

Plaintiff suggests that defendant's explanation is so weak, implausible, inconsistent, incoherent, or contradictory as to allow a jury to conclude that it is unworthy of credence. **See Pastran v. K-Mart Corp.**, 210 F.3d 1201, 1206 (10th Cir. 2000). She argues first that at the time she was informed of the decision not to consider her application further, Seinko told her that she chose to interview from the DEU certificate because she "felt that the competitive cert[ificate] gave [her] a much broader range of choices." Seinko also told plaintiff she felt plaintiff's support and assistance were "competent." Although plaintiff claims this version of defendant's reasoning varies from that Seinko provided in her affidavit responding to the EEO complaint, no rational factfinder could so conclude. Far from contradicting the original explanation, the affidavit merely expands on the reasons why Seinko chose not to rely on the internal certificate, including principally that the existing management team had been trained in and continued to foster a closed, fearful, and numbers-driven working environment that

---

[3] Although direct evidence of discriminatory intent would not require plaintiff to rely on this analytical framework, **see Trans World Airlines, Inc. v. Thurston**, 469 U.S. 111, 121, 105 S.Ct. 613, 621-22 , 83 L.Ed.2d. 523 (1985), she presents only circumstantial evidence in response to the motion for summary judgment.

was at odds with Seinko's own management style.  An employer's elaboration of its rationale in this manner is not evidence of pretext.  *See Smith v. Oklahoma ex rel. Tulsa County District Attorney*, 245 Fed. Appx. 807, 817 (10th Cir. Aug. 23, 2007); *Gonzales v. Comcast of Colorado IX, LLC*, 2010 WL 4156521 at *4 (D. Colo. Oct. 18, 2010); *Matthews v. Euronet Worldwide, Inc.*, 505 F.Supp.2d 850, 858-59 (D. Kan. 2007), *aff'd*, 271 Fed. Appx 770 (10th Cir. March 28, 2008).  Moreover, as this rationale did not single plaintiff out, but applied generally to the entire management team, Seinko's earlier suggestion that plaintiff was "competent" hardly justifies a reasonable inference of pretext.[4]

Plaintiff also points to EEOC Order 536, as amended by Directive 530.004(5)(d), to suggest that rather than being permitted to choose candidates from only one of the two certifications, Seinko was required to "[c]onsider all candidates certified for selection and choose[] objectively from among them." (Plf. Cross-Motion App., Exh. 1-E ¶ 5(d) at 2.)  There are several problems with this argument.  First, the statement on which plaintiff relies is largely hortatory, and, thus, hardly justifies the weight plaintiff asks it to

---

[4] Plaintiff's incredulity that Seinko professed in her affidavit a lack of specific knowledge of any training or awards plaintiff had received over the years is irrelevant.  The undisputed evidence is that Seinko did not consider plaintiff's, or any other internal candidate's, qualifications *at all* in deciding to interview from the DEU certificate.

Moreover, the Tenth Circuit has counseled caution in scrutinizing the relative merits of individual employees.  *See Jaramillo v. Colorado Judicial Department*, 427 F.3d 1303, 1308 (10th Cir. 2005).  "To show pretext, the disparity in qualifications must be overwhelming."  *Id*. (internal quotation marks omitted).  This plaintiff has not done.  *See Simms*, 165 F.3d at 1330 ("When two candidates are equally qualified in that they both possess the objective qualifications for the position and neither is clearly better qualified, 'it is within the employer's discretion to choose among them so long as the decision is not based on unlawful criteria.'") (quoting *Colon-Sanchez v. Marsh*, 733 F.2d 78, 82 (10th Cir.), *cert. denied*, 105 S.Ct. 181 (1984)).  In addition, it certainly would not be irrational for Seinko to have concluded that one of the qualifications for the position, albeit more intangible, was the ability to adapt to Seinko's own preferred management style.

bear.  More specifically, plaintiff points to no relevant portion in the actual procedures or requirements proscribed by the Order that were not followed in the selection of candidates for the Enforcement Manager position.[5]  Even if she had, "an employer's fail[ure] to follow its own internal *procedures* does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual."  **Randle v. City of Aurora**, 69 F.3d 441, 454 (10th Cir. 1995) (emphasis in original).

In addition, the evidence is undisputed that Seinko inquired of her district manager regarding whether she was required to consider both certificates and was told that she was not.  As there is nothing to suggest that Seinko's ignorance of the contrary provision of the EEOC Order was not genuine, her failure to adhere to it is not probative of pretext.  **See Stover v. Martinez**, 382 F.3d 1064, 1076 (10th Cir. 2004) ("[I]n evaluating pretext, the relevant inquiry is not whether [defendant's] proffered reasons were wise, fair or correct, but whether [defendant] honestly believed those reasons and acted in good faith upon those beliefs.") (citation and internal quotation marks omitted;

---

[5]  Plaintiff relies instead on a report of the EEOC's Federal Hispanic Work Group, which recommends that agencies should re-advertise positions when the "Best Qualified" list appears to lack diversity (*see* Plf. Cross-Motion App., Exh. 1-F at 13)  There is no evidence that this recommendation was ever implemented or otherwise had the effect of a binding policy.  Moreover, despite plaintiff's dubious reliance on evidence showing that no Hispanic females were employed in the DFO at the GS-14 level in March, 2009, there is no actual evidence that either certificate in this case actually lacked diversity.

Plaintiff also maintains that Seinko knew Gagne personally, encouraged her to apply for the Enforcement Manager position, and failed to conduct a reference check prior to offering Gagne the position, in violation of Directive 530.004.  Although Seinko denies informing Gagne of the position, these facts are wholly irrelevant.  Assuming plaintiff's facts to be true, and, thus, conceding that Seinko knew Gagne personally, a reference check would have been largely beside the point.  Moreover, plaintiff offers no evidence suggesting that the reference check, which she acknowledges ultimately was done, revealed anything that would have disqualified Gagne from the position or was otherwise unfair to any other applicant.

second and third alterations in original).  For all these reasons, the motion for summary judgment as to plaintiff's Title VII and ADEA discrimination claims will be granted.

Plaintiff's claim for retaliation centers on the alleged campaign by Seinko and Gagne to undermine plaintiff's supervisory authority after plaintiff filed her EEO complaint.  To prove this claim, plaintiff must establish a *prima facie* case by showing (1) that she engaged in protected activity under Title VII; (2) that she suffered an adverse employment action; and (3) that there is a causal connection between the two. ***See Gunnell v. Utah Valley State College***, 152 F.3d 1253, 1263 (10th Cir. 1998).  If these elements are established, defendant has the burden to proffer a legitimate, nondiscriminatory reason for her decision.  ***Pastran***, 210 F.3d at 1206.  The burden then shifts back to plaintiff to demonstrate that this reason is pretextual.  ***Id.***

Initially, I note that the plaintiff's EEO charged was filed more than seven months prior to the first act of the alleged retaliatory campaign she identifies.  Although not dispositive, such temporal distance makes it that much more difficult for plaintiff to establish the requisite causal connection.  ***See Clark County School District v. Breeden***, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001) (temporal proximity between opposition and adverse action must be "very close" to warrant a conclusion of causality); ***Richmond v. ONEOK, Inc.***, 120 F.3d 205, 209 (10th Cir. 1997) (lapse of three months insufficient).  Of course, a lack of temporal proximity may not attenuate an inference of retaliatory motive when a plaintiff can establish a pattern of retaliatory conduct that began soon after her complaints and only ultimately culminated in an adverse employment action.  ***See Meiners v. University of Kansas***, 359 F.3d

1222, 1231-32 (10th Cir. 2004); **Marx v. Schnuck Markets, Inc.**, 76 F.3d 324, 329 (10th Cir.), **cert. denied**, 116 S.Ct. 2552 (1996).  Yet the actions of which plaintiff complains did not begin "soon after" her complaint, and, thus, do not come within this exception to the temporal proximity rule.  **See Meiners**, 359 F.3d at 1232.

Yet setting aside the difficulties in causation, I note that plaintiff's list of alleged retaliatory actions, while lengthy, fails to identify any materially adverse employment action as required to make out a *prima facie* case.  A materially adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  **Burlington Northern and Santa Fe Railway Co. v. White**, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006) (citation and internal quotation marks omitted).  As the Supreme Court elaborated, this objective standard is intended to "separate significant from trivial harms:"

> Title VII, we have said, does not set forth a general civility code for the American workplace.  An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.  The antiretaliation provision seeks to prevent employer interference with unfettered access to Title VII's remedial mechanisms.  It does so by prohibiting employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers.  And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence.

*Id.* (citations and internal quotation marks omitted).

None of the incidents alleged by plaintiff as comprising Seinko's and Gagne's campaign of retaliation evidences more than a the type of "petty slights, minor annoyances, and simple lack of good manners" referenced above as failing to rise to

the level of a materially adverse employment action.[6]  These incidents may have made plaintiff's working environment less pleasant, perhaps even dysfunctional, but she suffered no material loss or demonstrable harm as a result thereof sufficient to deter a reasonable employee from making or pursuing a claim of retaliation.  Indeed, if anything, the incidents on which plaintiff relies appear to prove up the truth of Seinko's observation in support of her decision to choose candidates for the Enforcement Manager position solely from the DEU certificate – that her management style clashed with that of those on her team, including plaintiff.  Such workplace personality conflicts, however, do not suffice to create a genuine issue of material fact as to retaliation.

## IV. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That defendant's **Motion for Summary Judgment** [#49] filed June 5, 2011, is **GRANTED**;

2.  That **Plaintiff's Cross-Motion for Partial Summary Judgment** [#50] filed June 6, 2011, is **DENIED**;

3.  That plaintiff's claims are **DISMISSED WITH PREJUDICE**;

4.  That the Trial Preparation Conference, currently scheduled for Friday, August 19, 2011, at 2:30 p.m., as well as the trial, currently scheduled to commence on Monday, September 12, 2011, are **VACATED**;

5.  That judgment **SHALL ENTER** on behalf of defendant, Jacqueline A. Berrien,

---

[6] Defendant claims plaintiff failed to exhaust administrative remedies with respect to a November 22, 2010, letter of warning she received.  Plaintiff fails to respond to this argument at all, much less show exhaustion, and therefore, to the extent it is probative at all, the letter cannot support a claim for retaliation.  *See Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003).

Chair, Equal Employment Opportunity Commission, and against plaintiff, Holly Romero, as to all claims and causes of action asserted herein;

6.  That defendant is **AWARDED** her costs, to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated August 12, 2011, at Denver, Colorado.

**BY THE COURT:**

*/s/ Robert E. Blackburn*
Robert E. Blackburn
United States District Judge